UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LEE-TZU LIN,

          Plaintiff,

     v.

DIGNITY HEALTH—METHODIST
HOSPITAL OF SACRAMENTO, et al.,

          Defendants.

Civ. No.  S-14-0666 KJM  CKD

ORDER

       This case was on calendar on June 6, 2014, for a hearing on defendants' motions to dismiss and to strike.  Gregory Finch appeared for plaintiff; Barry Landsberg and Doreen Shenfeld appeared for defendants.  After considering the parties' arguments, the court GRANTS defendants' motions to strike and dismiss.

I.  BACKGROUND

       On March 12, 2014, plaintiff Lee-Tzu Lin filed a complaint in this court comprised of seven claims:  (1) a violation of 42 U.S.C. § 1981 against Methodist; (2) a violation of 42 U.S.C. § 2000d, *et seq*. (Title VI) against Methodist; (3) a violation of California Business and Professions Code § 17200 against all defendants; (4)  a violation of California Business and Professions Code § 16720 against all defendants; (5) interference with the right to practice a profession against all defendants; (6) interference with prospective economic advantage against

1

1   Methodist and Imperato; and (7) a violation of California Health and Safety Code section 1278.5
2   against Methodist and Imperato.  These claims arise out of the following facts taken from the
3   complaint:
4              Lin is a doctor board certified in both cardiology and internal medicine.  Compl.,
5   ECF No. 1 ¶ 9.  Beginning in 1994, Lin had privileges at Methodist.  Imperato was the
6   department chair for internal medicine at Methodist.  *Id*. ¶¶ 10, 12.  Before April 2011, Lin was
7   the only female cardiologist who regularly provided services to Methodist and the only
8   cardiologist who was not a member of a medical group.  *Id*. ¶¶ 13-14.
9              On March 16, 2011, Imperato performed a colonoscopy on a patient who went into
10  cardiac arrest during the procedure.  The patient was resuscitated, transferred to the ICU and
11  intubated.  *Id*. ¶ 15.  Imperato informed Lin about this and then abandoned the patient, who died.
12  *Id*. ¶ 16.  Lin prepared a "Death Discharge Summary," which included information indicating the
13  patient had not been hemodynamically stable enough for the colonoscopy.  *Id*. ¶ 17.  In Lin's
14  opinion, Imperato had breached the standard of care by not consulting a cardiologist to stabilize
15  the patient before performing the colonoscopy and by abandoning the patient after the failed
16  procedure.  *Id*. ¶ 18.
17             On April 12, 2011, Imperato and Chief of Staff Amir Sweha told Lin her
18  privileges at Methodist were summarily suspended because she posed a danger to patients
19  stemming from her failure to satisfy the medical staff's requirements for a blood transfusion on a
20  patient.  *Id*. ¶¶ 20, 22.  The transfusion had, in fact, complied with the Medical Staff's criteria.  *Id*.
21  ¶ 23.  The suspension was affirmed by Methodist's medical committee on April 21, 2011.  *Id*.
22  ¶ 21.
23             Defendants filed the motions to dismiss and to strike on May 2, 2014.  ECF
24  Nos. 8, 10.  Plaintiff has filed a single opposition to both motions.  ECF No. 12.  Defendants
25  have replied.  ECF No. 14.
26  II.  REQUEST FOR JUDICIAL NOTICE
27             Defendants have asked the court to take judicial notice of the Decision and Final
28  Order of the Judicial Review Committee and Recommendation of the Hearing Officer re:

2

Termination of Lee Tzu Lin, dated June 30, 2012; Final Decision of the Governing Body of Methodist Hospital, dated September 27, 2012; and excerpts of the Methodist Hospital Medical Staff Bylaws.  Req. for Judicial Notice, ECF No. 9.  Plaintiff does not object and has in fact provided these documents as exhibits to her opposition to the motion to dismiss.  Opp'n, ECF No. 12, Exs. 1, 2, & 4.  Judicial notice of these documents is appropriate.  *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1281 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991).

Plaintiff attached one other document to her opposition, a May 17, 2012 letter from the Medical Board of California regarding the Board's investigation of her.  Opp'n, Ex. 3, ECF No. 12-3 at 2.  The court ordered it stricken and sealed because plaintiff had not redacted the names of patients and information about their medical conditions.  ECF No. 16.  Plaintiff resubmitted a redacted version on June 3, 2014.  ECF No. 17.

Defendants object to plaintiff's reliance on the letter.  ECF No. 15.  The court declines to resolve the objection, as it finds the letter is not relevant to determination of the pending motions.

III.  THE MOTION TO STRIKE

Defendants argue that plaintiff's state law claims are subject to dismissal under California's anti-SLAPP[1] statutes, CAL. CIV. PROC. CODE § 425.16, *et seq.*  Under Section 425.16(b)(1) of California's Code of Civil Procedure, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  A defendant in federal court may bring an anti-SLAPP motion against state law claims.  *See Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1207 (9th Cir. 2005) (per curiam).  In considering the motion, a court must interpret the statute broadly.  *Greater Los Angeles Agency*

---

[1] SLAPP is an acronym for strategic lawsuit against public participation.  *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 815 n.1 (2011).  All references to the anti-SLAPP statutes are to the California Code of Civil Procedure.

1   *on Deafness, Inc. v. Cable News Network, Inc*., 742 F.3d 414, 421 (9th Cir. 2014).

2        Evaluation of an anti-SLAPP motion occurs in two steps:  "First, the defendant

3   must make a prima facie showing that plaintiff's suit 'arises from an act in furtherance of the

4   defendant's rights of petition or free speech.' . . . 'Second, once the defendant has made a prima

5   facie showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the

6   challenged claims.'"  *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010)

7   (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097  (9th Cir. 2003)).

8        A.  Prima Facie Showing of a Protected Act

9             1.  Protected Act

10        The California statute defines a protected act for purposes of an anti-SLAPP suit

11   as:

12        (1) any written or oral statement or writing made before a

13        legislative, executive, or judicial proceeding, or any other official
     proceeding authorized by law;

14        (2) any written or oral statement or writing made in connection with

15        an issue under consideration or review by a legislative, executive,
     or judicial body, or any other official proceeding authorized by law;

16        (3) any written or oral statement or writing made in a place open to

17        the public or a public forum in connection with an issue of public
     interest;

18        (4) or any other conduct in furtherance of the exercise of the

19        constitutional right of petition or the constitutional right of free
     speech in connection with a public issue or an issue of public

20        interest.

21   Cal. Civ. Proc. Code § 425.16(e).

22        It is defendants' burden to show that Lin's suit arises from a protected act.  *Mindys*

23   *Cosmetics*, 611 F.3d at 595; *Smith v. Adventist Hosp*., 190 Cal. App. 4th 40, 56 (2010).

24        As part of their evidentiary showing in support of the motion to strike, defendants

25   have presented the declaration of Amir Sweha, M.D., currently the Vice President of Medical

26   Affairs for Methodist Hospital.  Dr. Sweha, who previously served as Chief of Staff, describes the

27   peer review procedures in place at Methodist, which may begin either as the result of chart

28   reviews at regular Medical Staff meetings or by referral from a member of a patient care team or

1   the hospital's "risk management" or "performance improvement" personnel.  Decl. of Amir

2   Sweha ¶ 5.  Once the process has begun, the Medical Staff uses a progressive corrective action

3   scheme.  *Id*. ¶ 7.  Dr. Sweha was involved in the peer review process before, in connection with,

4   and after the summary suspension of plaintiff and says that "all available information was

5   gathered" in order to make a decision.  *Id*. ¶ 9.

6          After her summary suspension, plaintiff requested an administrative peer review

7   hearing before a committee known as the Judicial Review Committee (JRC) to challenge the

8   suspension.  *Id*. ¶ 12.  A "Notice of Charges" was sent to plaintiff, advising her of the acts and

9   omissions underlying the summary suspension and notifying her of the hearing date.  *Id*. ¶ 12.

10  She retained counsel to represent her at the hearing.  *Id*.  After a lengthy delay, the hearing officer

11  set a firm date for the hearing and sent a notice to the parties, asking plaintiff and her lawyer to

12  advise him if they were not going to appear.  *Id*. ¶ 12.

13         When neither plaintiff nor her lawyer appeared at the hearing, the JRC

14  recommended to the hospital's governing board that plaintiff be deemed to have waived her right

15  to a peer review hearing.  *Id*. ¶ 14 & Ex. C, ECF No. 11 at 52-73.

16         Plaintiff appealed the JRC recommendation to the Hospital Governing Board,

17  which adopted and affirmed the JRC's recommendation.  *Id*. ¶ 15 & Ex. D, ECF No. 11 at 75-84.

18         In *Kibler v. Northern Inyo County Local Hospital District*, the California Supreme

19  Court held that "a hospital's peer review qualifies as 'any other official proceeding authorized by

20  law' under subparagraph (2) of subdivision (e) and thus a lawsuit arising out of a peer review

21  proceeding is subject to a special motion under section 425.16 to strike the SLAPP suit."  39 Cal.

22  4th 192, 198 (2006).  The court found that Kibler's causes of action for defamation, abuse of

23  process, and interference with the practice of medicine were subject to an anti-SLAPP motion to

24  strike.  *Id*. at 195.

25         In *Nesson v. Northern Inyo County Local Hospital District*, the Court of Appeal

26  described *Kibler* as holding that "hospital peer review activities, including discipline imposed

27  upon a physician, constitute 'official proceeding[s] authorized by law.'"  204 Cal. App. 4th 65, 78

28  (2012) (quoting *Kibler*, 39 Cal. 4th at 198), *disapproved of in part on other grounds by Fahlen v.*

1    *Sutter Cent. Valley Hosp.*, 58 Cal. 4th 655 (2014).  Based on *Kibler* and *Nesson*, this court finds

2    the peer review process in this case is protected for purposes of an anti-SLAPP suit.

3                      2.  Arising From the Protected Act

4                      "In the anti-SLAPP context, the critical consideration is whether the cause of

5    action is *based* on the defendant's protected . . . activity.'"  *Mindys Cosmetics*, 611 F.3d at 597

6    (quoting *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002)) (emphasis in original).   The court must

7    "examine the *principal thrust* or *gravamen* of a plaintiff's cause of action to determine whether

8    the anti-SLAPP statute applies . . . ."  *Nesson*, 204 Cal. App. 4th at 65 (emphasis in original)

9    (citations and internal quotations omitted).

10                     In *Nesson*, the Court of Appeal found that the doctor's claims for breach of

11   contract, retaliation and discrimination arose out of the hospital's peer review process because the

12   "gravamen of each cause of action . . . is that the Hospital somehow acted wrongfully when it

13   terminated the Agreement because Nesson's privileges were summarily suspended . . . " and

14   because Nesson "fail[ed] to cite any evidence of retaliation or discrimination which is not

15   connected with his summary suspension."  *Id*. at 64-65.  *See also Smith*, 190 Cal. App. 4th at 56

16   (assuming that plaintiff's  claims for intentional interference with the right to pursue a lawful

17   occupation, interference with prospective business advantage, unfair competition, and state anti-

18   trust violations arose from the hospital's summary suspension); *Hansen v. Ca. Dept. of*

19   *Corrections & Rehabilitation*, 171 Cal. App. 4th 1537, 1545-46 (finding a retaliatory discharge

20   claim subject to an anti-SLAPP motion); *but see Young v. Tri-City Healthcare Dist*., 210 Cal.

21   App. 4th 35 (2012) (finding an administrative mandamus action attacking the procedural

22   propriety of his suspension did not arise out of the peer review process).

23                     Here, plaintiff alleges the defendants acted improperly in terminating her

24   privileges at the hospital.  As with the claims in *Nesson*, these claims of discrimination, unfair

25   practices and interference with economic interests rest on plaintiff's challenge to the committee's

26   actions.  These claims arise from the protected activities related to the peer review process.

27   /////

28   /////

6

1          B.  Probability of Success on the Merits

2                    At this step, the burden shifts to plaintiff to show a reasonable probability of

3     prevailing on her claims.  *Mindys Cosmetics*, 611 F.3d at 598.  To satisfy this standard, "the

4     plaintiff must 'demonstrate that the complaint is both legally sufficient and supported by a

5     sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted

6     by the plaintiff is credited.'"  *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002)

7     (quoting *Matson v. Dvorak*, 40 Cal. App. 4th 539, 548 (1995)).  In evaluating the question of

8     potential merit, the court must consider "'the pleadings, and supporting and opposing affidavits

9     stating the facts upon which the liability or defense is based.'"  *Mindys Cosmetics*, 611 F.3d at

10    598 (quoting Cal. Civ. Proc. Code, § 426.16(b)(2)); *see also Young*, 210 Cal. App. 4th at 54

11    ("The evidence of the moving party . . . is considered for whether it defeats, as a matter of law,

12    the evidence submitted by [the non-moving party].").  An anti-SLAPP motion should be granted

13    "when a plaintiff presents an insufficient legal basis for the claims or when no evidence of

14    sufficient substantiality exists to support a judgment for the plaintiff."  *Metabolife Int'l, Inc. v.*

15    *Wornick*, 264 F.3d 832, 840 (9th Cir 2001) (citation, internal quotation omitted).

16                   Defendants argue that all but one of plaintiff's claims are barred by her failure to

17    exhaust judicial remedies; all are barred by California's litigation privilege and res judicata and

18    collateral estoppel; and defendants are immune under the Health Care Quality Improvement Act,

19    42 U.S.C. § 1111, *et seq*. (HCQIA).  They also contend the claims fail for a number of other

20    reasons.  The court agrees that all claims except for plaintiff's whistleblower claim are barred by

21    the failure to exhaust and the whistleblower claim fails because neither plaintiff's pleading nor

22    any evidence submitted in connection with the motion shows that she satisfies the requirements of

23    the statute.  Accordingly, the court declines to address the other bases.

24                   1.  Judicial Exhaustion

25                   In California, a medical professional may seek damages for the withdrawal or

26    denial of privileges only after she has exhausted the hospital's internal review procedure and has

27    been successful in a mandamus action in setting aside the denial.  *Westlake Cmty. Hosp. v.*

28    *Superior Court*, 17 Cal.3d 465, 468 (1976).  The court said, "so long as such a quasi-judicial

1   decision is not set aside through appropriate review procedures the decision has the effect of

2   establishing the propriety of the hospital's action." *Id*. at 48. *Westlake* is "not limited to cases

3   that sound in tort" and applies to state law claims pursued in federal court. *Mir v. Little Co. of*

4   *Mary Hosp*., 844 F.2d 646, 651 (9th Cir. 1988) (finding state antitrust and common law claims

5   brought in federal court barred because the administrative decision was not set aside in

6   mandamus proceeding).  The California Supreme Court has recently held that a person claiming

7   whistleblower retaliation under California Health and Safety Code section 1278.5 need not pursue

8   a mandamus action before filing a complaint for damages. *Fahlen*, 58 Cal. 4th at 660.

9           It is defendant's burden to show an adequate remedy, one that provides a right to

10  be heard and a decision rendered through a fair and sufficient process, was available to plaintiff.

11  *Westlake* at 477; *Payne v. Anaheim Mem'l Hosp.*, 130 Cal.App.4th 729, 739-40 (2005).

12          Defendants have presented portions of Methodist's Medical Staff Bylaws, which

13  provide that suspension of membership in the medical staff or clinical privileges is ground for a

14  hearing.  The Bylaws describe the procedures, including notice of the action; pre-hearing

15  discovery including the exchange of witness lists and documents; appointment of a JRC; the

16  conduct of the hearing, including the member's right to representation at the hearing and the right

17  to challenge the JRC members for bias and to examine and cross examine witnesses and present

18  documentary evidence; and finally the internal appeal process.  ECF No. 11 at 34-44.  The

19  Bylaws also provide that "[u]nder no circumstances shall the hearing be conducted without the

20  presence of the Practitioner unless Practitioner has waived such appearance or has failed without

21  good cause to appear after appropriate notice."  ECF No. 39.

22          Defendants have also presented the Hearing Officer's recommendation, recounting

23  plaintiff's failure to appear at the hearing despite notice, and the JRC's adoption of the Hearing

24  Officer's recommendation that plaintiff's failure to appear constituted a waiver of her right to

25  proceed further.  ECF No. 11 at 52-73.  In addition, defendants have provided the court with the

26  Final Decision following plaintiff's internal appeal.  ECF No. 11 at 75-84.  They have borne their

27  burden of showing the availability of a remedy.

28  /////

8

During argument on the motion, plaintiff contended the administrative proceedings were a sham, yet any claim that plaintiff did not receive a fair hearing could have been raised in a petition for administrative mandamus. *See City of Pleasanton v. Bd. of Admin. of the Ca. Pub. Emp. Ret. Sys.*, 211 Cal. App. 4th 522, 531 (2012); *Nasha LLC v. City of Los Angeles*, 125 Cal. App. 4th 470, 485 (2004) (stating court may consider evidence not presented at the hearing if the evidence is relevant to claimed denial of a fair hearing); Cal. Civ. Proc. Code § 1094.5(b) ("The inquiry in such a case shall extend to questions whether . . . there was a fair trial . . . ."). In light of plaintiff's failure to exhaust her judicial remedies, she has not shown a reasonable probability she can succeed on her claims for violations of California Business and Professions Code §§ 16720 and 17200 and for interference with the right to practice a profession and prospective economic advantage.

2. Whistleblower Claim

The California Health and Safety Code provides in pertinent part:

(b)(1) No health facility shall discriminate or retaliate, in any manner, against any patient, employee, member of the medical staff, or any other health care worker of the health facility because that person has done either of the following:

(A) Presented a grievance, complaint, or report to the facility, to an entity or agency responsible for accrediting or evaluating the facility, or the medical staff of the facility, or to any other governmental entity.

(B) Has initiated, participated, or cooperated in an investigation or administrative proceeding related to, the quality of care, services, or conditions at the facility that is carried out by an entity or agency responsible for accrediting or evaluating the facility or its medical staff, or governmental entity.

(2) No entity that owns or operates a health facility, or which owns or operates any other health facility, shall discriminate or retaliate against any person because that person has taken any actions pursuant to this subdivision.

Cal. Health & Safety Code § 1278.5.

Defendants have presented a copy of the Death Discharge Summary plaintiff suggests was the reason for her summary suspension. ECF No. 11 at 88-93. The handwritten document is entitled "Progress Record" and the typed version is called "Discharge Summary,"

9

1    with a notation that it is "Not Permanent Part of Patient Record."  Dr. Sweha acknowledges

2    plaintiff prepared the Death Discharge Summary, but says it is neither a "complaint about the care

3    provided to this patient—much less is it a complaint about quality of care provided generally to

4    patients at Methodist Hospital."  Sweha Decl. ¶ 17.  Rather, both the handwritten and typewritten

5    documents are "standard required medical documentation for all patients cared for at Methodist

6    Hospital whether the patient is discharged home or to another healthcare facility, or whether the

7    patient passes away at the Hospital."  *Id*.  Dr. Sweha further avers these documents would not

8    have been reviewed by hospital administrators, but rather "only by Medical Staff Committee, in

9    particular, the Medical Staff's *Physician Excellence Committee*.  This Medical Staff committee is

10   comprised *only* of Medical Staff members."  *Id.* (emphasis in original).  In California, "[h]ospitals

11   have a dual structure.  First, an administrative governing body (often comprised of persons other

12   than health care professionals) takes ultimate responsibility for the quality and performance of the

13   hospital.  Second, 'an organized medical staff' entity (comprised of health care professionals) has

14   responsibility for providing medical services, and is 'responsible to the governing body for the

15   adequacy and quality of the medical care rendered to patients in the hospital."  *Alexander v. Sup.*

16   *Ct.*, 5 Cal. 4th 1218, 1224 (1993) (quoting 22 Cal. Code Regs. § 70703, subd. (a), *overruled on*

17   *other grounds by Hassan v. Mercy Am. River Hosp.*, 31 Cal. 4th 709 (2003)); *but see El-Attar v.*

18   *Hollywood Presbyterian Med. Ctr.*, 56 Cal. 4th 976, 992-94 (2013) (noting the overlap between

19   the two entities in some situations).

20          In addition, Dr. Sweha has presented a copy of an "Event Report," which

21   Methodist employees and physicians use to alert the Hospital and Medical Staff about quality of

22   care issues.  Sweha Decl. ¶ 16 & Ex. E.  Dr. Sweha avers plaintiff did not submit such a form in

23   connection with the death of her patient on March 17.  *Id.* ¶ 16.

24          "Section 1278.5 of the California Health and Safety code is intended to encourage

25   medical staff and patients to notify government entities of 'suspected unsafe patient care and

26   conditions.'  The statute prohibits retaliation against any employee who complains to an employer

27   or a government agency about unsafe patient care or conditions."  *Mendiondo v. Centinela Hosp.*

28   *Med. Ctr.*, 521 F.3d 1097, 1105 (9th Cir. 2008) (citation omitted).  To proceed on a whistleblower

1  case, "a plaintiff must show that:  (1) [s]he engaged in protected activity under the statute;

2  (2) [s]he was thereafter subjected to an adverse employment action; and (3) a causal link between

3  the two."  *Jadwin v. Cnty of Kern*, 610 F. Supp. 2d 1129, 1144 (E.D. Cal. 2009).

4          Defendants argue there is no showing plaintiff made a report to the facility, as

5  there is no evidence the Death Discharge document was ever provided to the Hospital Board, the

6  entity she is suing.  Defendants do concede that in the normal course the summary would have

7  been reviewed by the Medical Staff Committee; as the statute provides that reporting to a medical

8  staff may trigger whistleblower protections, this is sufficient for reporting to the facility.

9  Defendants appear to be correct, however, that the Death Discharge Summary is not a "report"

10  within the contemplation of section 1278.5.  That provision "does not explicitly limit the type of

11  'grievance, complaint, or report' for which retaliation is prohibited to one involving concerns

12  about the quality of patient care.  However, such a limitation is implicit in other provisions of the

13  statute."  *Fahlen*, 58 Cal. 4th at 172 n.6.  This summary of the patient's stay at the hospital is not

14  a report "involving concerns about the quality of patient care" even though it notes the patient's

15  death.

16          Plaintiff has not responded to this motion with any evidence of another complaint,

17  grievance or report and has not rebutted defendants' showing that the document she completed

18  was routinely prepared for all patients.  At argument, counsel said he needed to conduct discovery

19  to determine whether the discharge summary was received and considered as a report.  Because

20  plaintiff did not make "a timely and proper showing in response to the motion to strike, that a

21  defendant or witness possesses evidence needed by plaintiff to establish a prima facie case," she

22  is not entitled to a "reasonable opportunity to obtain that evidence through discovery before the

23  motion to strike is adjudicated."  *Lafayette Morehouse, Inc. v. Chronicle Publ'g Co*., 37 Cal. App.

24  4th 855, 868 (1995); *see also Gressett v. Contra Costa Cnty*., No. C-12-3798 EMC, 2013 WL

25  2156278, at *35 (N.D. Cal. 2013) (discussing whether the "good cause" requirement of

26  § 425.16(g) or Rule 56(d) of the Federal Rules of Civil Procedure applies).

27          Plaintiff has not shown a reasonable likelihood of prevailing on her whistleblower

28  claim.

1  IV.  THE MOTION TO DISMISS

2  　　　A.  Standards for a Motion to Dismiss

3  　　　　　Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

4  dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

5  dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

6  under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

7  1990).

8  　　　　　Although a complaint need contain only "a short and plain statement of the claim

9  showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion

10 to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

11 claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

12 *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something

13 more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

14 conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting

15 *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss

16 for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

17 its judicial experience and common sense." *Id.* at 679.  Ultimately, the inquiry focuses on the

18 interplay between the factual allegations of the complaint and the dispositive issues of law in the

19 action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

20 　　　　　In making this context-specific evaluation, this court must construe the complaint

21 in the light most favorable to the plaintiff and accept as true the factual allegations of the

22 complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  This rule does not apply to "'a legal

23 conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) *quoted

24 in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to

25 judicial notice" or to material attached to or incorporated by reference into the complaint.

26 *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).  A court's

27 consideration of documents attached to a complaint or incorporated by reference or matter of

28 judicial notice will not convert a motion to dismiss into a motion for summary judgment.  *United*

12

1    *States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d

2    1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977,

3    980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to

4    dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

5        B.   42 U.S.C. § 1981

6            Title 42 U.S.C. § 1981 "has a specific function:  It protects the equal right of '[a]ll

7    persons within the jurisdiction of the United States' to 'make and enforce contracts' without

8    respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474-75 (2006) (quoting

9    42 U.S.C. § 1981(a)).  The right to "make and enforce contracts" includes "the making,

10   performance, modification, and termination of contracts, and the enjoyment of all benefits,

11   privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  To

12   successfully plead a claim under § 1981, a plaintiff must allege she is the member of a racial

13   minority, defendants intended to discriminate, and the discrimination concerned one or more of

14   the activities listed in the statute, such as making and enforcing contracts.  *Dutra v. BFA Waste*

15   *Sys. of N. Am., Inc*., No. 12–cv–03338 NC, 2013 WL 2950662, at *3 (N.D. Cal. June 14, 2013).

16           Plaintiff has not identified herself as a member of a racial minority nor has she

17   identified a contract she was prevented from making or enforcing.  *See Ennix v. Stanten*,

18   556 F. Supp. 2d 1073, 1082 (N.D. Cal. 2008) ("A contract is necessary to a Section 1981

19   claim.").  Defendants suggest she will not be able to allege the necessary contract because, under

20   California law, membership on a medical staff does not create a contractual relationship.  ECF

21   No. 8 at 13 (citing *O'Byrne v. Santa Monica–UCLA Med. Ctr*, 94 Cal. App. 4th 797, 810 (2001))

22   (stating that "medical staff bylaws . . . do not in and of themselves constitute a contract between a

23   hospital and physician on its medical staff"); *Marshall v. Meadows*, No. CIV S–10–1286 JAM

24   DAD PS, 2011 WL 976620, at *7 (E.D. Cal. Mar. 16, 2011) (dismissing § 1981 claim by doctor

25   refused hospital privileges for failing to describe the contractual relationship between the parties);

26   *but see Ennix*, 556 F. Supp. 2d. at 1083-84 (finding the evidence disputed on the question whether

27   a doctor had a contractual relationship with hospital arising out of the granting of medical-staff

28   /////

13

1    privileges).  At hearing, counsel conceded plaintiff did not have a viable § 1981 claim.  This

2    claim is dismissed without leave to amend.

3        C.  42 U.S.C. § 2000d

4            Under Title 42 U.S.C. § 2000d, "no person . . . shall, on the ground of race, color,

5    or national origin, be excluded from participation, denied the benefits of, or be subjected to

6    discrimination under any program or activity receiving Federal financial assistance."  To state a

7    claim for a violation of this section, a plaintiff must plead that "(1) the entity involved is engaging

8    in racial discrimination; and (2) the entity involved is receiving federal financial assistance."

9    *Fobbs v. Holy Cross Health Sys. Corp.*, 29 F.3d 1439, 1447 (9th Cir. 1994), *overruled in part on*

10   *other grounds by Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131 (9th Cir. 2001).

11   In the complaint, plaintiff alleges Methodist receives federal funds and it discriminated against

12   her on the basis of her sex.  ECF No. 1 ¶¶ 27-28.  However, a "claim of discrimination on the

13   basis of sex . . . may not be brought under Title VI."  *Loch v. Bd. of Educ. of Edwardsville Cmty.*

14   *Sch. Dist. # 7*, Civil Action No. 3:06-cv-17-MJR,  2007 WL 1468675 at *4 (S.D. Ill. May 18,

15   2007).

16           Defendants argue this claim is barred by the applicable two-year statute of

17   limitations and so giving plaintiff leave to amend is not warranted.   ECF No. 8 at 15.  The statute

18   of limitations for claims brought under § 2000d is the "same state limitations period applicable to

19   claims brought under [42 U.S.C.] § 1983."  *Taylor v. Regents of Univ. of California*, 993 F.2d

20   710, 712 (9th Cir. 1993) (per curiam).  A § 1983 claim is governed by California's two-year

21   statute of limitations for personal injury actions.  *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir.

22   2004); CAL. CIV. PROC. CODE § 335.1.  Defendants argue the harm occurred when the Medical

23   Executive Committee (MEC) affirmed her summary suspension in April 2011.  *See* ECF No. 8 at

24   15.  In opposition, plaintiff argues the claim is timely because the final decision affirming the

25   suspension was not issued until September 27, 2012.  ECF No. 12 at 7.

26           In *Fobbs*, the Ninth Circuit said that when a doctor challenges a summary

27   suspension of privileges, the statute of limitations begins to run when the doctor is notified of the

28   suspension.  29 F.3d at 1444.  It rejected the doctor's argument that the claim did not accrue until

14

1   the suspension became final after the completion of administrative proceedings.  *Id*.  However, in

2   *Daviton*, the Ninth Circuit said that a plaintiff's pursuit of administrative remedies may give rise

3   to equitable tolling.  241 F.3d at 1139-42.  Equitable tolling has three elements in California:

4   "(1) timely notice to the defendant in filing the first claim; (2) lack of prejudice to the defendant

5   in gathering evidence to defend against the second claim; and (3) good faith and reasonable

6   conduct by the plaintiff in filing the second claim."  *Lucchesi v. Bar-O Boys Ranch*, 353 F.3d

7   691, 694-95 (9th Cir. 2003); *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993).

8   The "notice" element of this test is satisfied when the first claim "'alert[s] the defendant in the

9   second claim of the need to begin investigating the facts which form the second claim.'"

10  *Daviton*, 241 F.3d at 1138 (quoting *Collier v. City of Pasadena*, 142 Cal. App. 3d 917, 924

11  (1983)).

12              "[P]laintiffs seeking to toll the statute of limitations . . . must have included the

13  allegation in their pleadings."  *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 991

14  (9th Cir. 2006).  Where a plaintiff fail to "present[] any facts that would warrant equitable

15  tolling," the court must dismiss a claim filed outside the statute of limitations.  *Rucker v.*

16  *Sacramento Cnty. Child Protective Servs.*, 462 F. App'x 762, 763 (9th Cir. 2011) (citing

17  *Scholar v. Pac. Bell*, 963 F.2d 264, 267–68 (9th Cir. 1992)).  Plaintiff's complaint does not even

18  mention the administrative proceedings and so presents nothing supporting her entitlement to

19  equitable tolling based on the pursuit of administrative remedies.

20          Generally a court "shall grant leave to amend freely 'when justice so requires,'" *Lopez v.*

21  *Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting Fed. R. Civ. P. 15(a)), and should

22  consider allowing a plaintiff "to plead facts supporting the application of equitable tolling,"

23  *Lima v. Am. Home Mortg. Servicing, Inc.*, No. C 09-3561 CW, 2010 WL 144810, at *4 (N.D. Cal.

24  Jan. 11, 2010).  In determining whether amendment is appropriate, the court considers "bad faith,

25  undue delay, prejudice to the opposing party, futility of amendment,  and whether the plaintiff has

26  previously amended the complaint."  *United States v. Corinthian College*, 655 F.3d 984, 995 (9th

27  Cir. 2011).  If the complaint cannot be saved by any amendment, the court may deny leave to

28  amend based on futility.  *Id*.

1          At hearing on the motion, plaintiff acknowledged she did not participate in the

2   administrative hearing on the suspension of her privileges.  Because of this failure, she did not

3   present her claim of discrimination as the real reason for her discharge to the peer review

4   committee and ultimately to the Hospital's Governing Body and so did not give the sort of notice

5   that would allow the Hospital "to begin investigating the facts" underlying any claim of racial

6   discrimination.  Giving her leave to amend the complaint to raise equitable tolling would be

7   futile.

8          IT IS THEREFORE ORDERED that:

9          1.  Defendants' motion to dismiss, ECF No. 8, is granted;

10         2.  Defendants' motion to strike, ECF No. 10, is granted; and

11         3.  This case is closed.

12   DATED:  July 10, 2014.


_____
UNITED STATES DISTRICT JUDGE

16